## Case No. 17,672.

### WILKINSON et al. v. GREELY.

[1 Curt. 439.] [1]

Circuit Court, D. Massachusetts. Oct. Term, 1853.

CUSTOMS DUTIES — ACTION TO RECOVER DUTIES PAID—BURDEN OF PROOF—COMMERCIAL DESIGNATION.

1. A collector who has compelled an importer to pay a higher rate of duty than that imposed by law on such articles as are named in the in-

---

[1] [Reported by Hon. B. R. Curtis, Circuit Justice.]

voice, has the burden of proof to show the authority under which such higher duty was exacted.
[Criticised in Arthur v. Unkart, 96 U. S. 123.]

2. When the question is, whether samples bore a particular name in commercial transactions, it is necessary they should have been so known generally, and not in particular places, to the exclusion of others, or to particular persons only.

3. On this question, negative evidence, from those engaged in the trade, has much weight.

4. If articles identical with the samples were not generally known, the question whether the diversities were material arises; and this may be a question of law when the facts are ascertained. A change, which renders an article substantially different as an article of commerce, and adapts it to all the uses of another article, on which a higher rate of duty is levied, destroys its legal identity, and is a material change under the revenue law.

This was an action for money had and received, to recover an alleged excess of duties exacted by the defendant [Philip Greely, Jr.], while collector of the customs for the port of Boston. A new trial was granted in this case, which is reported. [Case No. 17,671.] On this trial it appeared, that before the tariff act of 1846, various kinds of blankets were imported into the United States, among which was Mackinaw blankets, under which name the merchandise in question was invoiced, and entered by the plaintiffs [Arthur Wilkinson and others] at the custom-house in Boston, in August, 1849. The collector refused to allow them to pass under the designation of blankets, and assessed upon them an ad valorem duty of thirty per centum as manufactures of wool. Some testimony was introduced, tending to show that articles in all respects like these had been imported into New York, and known there as blankets before the date of the tariff act of 1846. There was also other evidence tending to prove that Mackinaw blankets, before that time, bore a stripe at the ends, and that after 1846 it was left off, as was the case with these goods, in order that they might be used for making garments with less waste of cloth. And there was evidence, that, so far as respected the fabric, and the processes of manufacture, these goods were substantially like certain species of coatings imported in pieces of twenty yards and upwards, under the names of Duffels, Petershams, and Pilots, known in commerce by those names, and entered at the custom-house as manufactures of wool. And there was evidence to the contrary on each of these points. Witnesses, skilled in the trade, were called on both sides, some of whom testified that goods like these, with some differences, were, and some that they were not, known in commerce as blankets, before the tariff act of 1846 [9 Stat. 42].

Choate & Griswold, for plaintiffs.
Mr. Hallett, Dist. Atty., for defendant.

CURTIS, Circuit Justice (charging jury). The tariff act of 1846 imposes a duty of thirty per centum, ad valorem, upon manufactures of wool, or of which wool is the component material of chief value, not otherwise pro-

vided for. These cloths are unquestionably manufactures of wool. They are, therefore, liable to pay thirty per centum, unless they are otherwise provided for. They are not otherwise provided for, unless they come under that clause of the act which levies a duty of twenty per centum upon blankets of all kinds. The question for you to try is, whether the articles, samples of which are before you, come under that last-mentioned clause of the act. In considering this question, you must bear in mind that the burden of proof is upon the defendant. Acting in behalf of the government, he has levied upon these commodities a duty of thirty per centum. He has compelled the plaintiffs to pay it. When any officer of the government compels a citizen to pay a tax, he may be required to show that it was exacted by authority of law. The defendant must prove this here; and he can do so, only by satisfying you that these articles were not blankets, within the meaning of the tariff act of 1846.

Usually, it is for the court alone, to ascertain and declare the meaning and effect of an act of congress. But laws levying duties upon particular articles are, to some extent, an exception from this rule. The reason is, that congress is understood to have designated the various commodities subjected to duty, by the names by which they are generally known in commerce; and when a question arises, whether a particular article is embraced under some particular name in such a law, the first inquiry is, whether such articles were generally known in commerce by that name, when the law was passed. This inquiry can be made only by the jury, and therefore it is that your aid is necessary to determine whether these articles, now in question, are, or are not, included in this act of 1846, under the words, "blankets of all kinds." In approaching the inquiry you are to make, there are several matters which, though preliminary to the main question, are nevertheless important.

It is generally agreed by the witnesses, that the term blankets is a generic term, which includes a considerable number of different kinds of blankets. That in commercial dealings, there is no such thing bought or sold or known as blankets merely. But always some particular kind of blankets, as Mackinaw, or Rose, or Whitney, or Duffel blankets. And you observe that the act of congress does not speak of blankets, or blanketing, but of "blankets of all kinds." Now, the plaintiffs have imported and entered these fabrics under the name of Mackinaw blankets. You will consider then, whether the inquiry is not narrowed down to the question whether these were Mackinaw blankets. This may be quite material. For, if that be the true inquiry, you need not trouble yourselves about the characteristics of other species of blankets. You will readily perceive, that if it were competent for the foreign manufacturer to select from each kind of blankets such characteristics as he might wish, the fine wool from one,

the close beating from another, the shearing from a third, the milling from a fourth, and the absence of the stripes from a fifth, he might produce a fabric which had no one quality not common to some kind of blankets, yet, as a whole, totally unlike any of them. And, therefore, it is important to bear in mind, that you are to ascertain whether such articles as these were known as any kind of blankets in 1846; especially, whether they were known as Mackinaw blankets. And it is not enough that they were so known in some one place, to the exclusion of others, or to some particular importers. They must have been so known generally to those engaged in the trade. The necessity for this is apparent. For if these cases were to be decided according to the designation of articles in particular places, or among some particular persons, the decisions must vary, and the application of the law, instead of being uniform throughout the whole country, would be irregular, unequal, and unjust. It is particularly important, therefore, that you should bear in mind, that when it is said that the question is whether these articles were known in commerce as some kind of blankets, it is meant, were they generally so known throughout the United States to persons engaged in the trade. At the same time, if they appear to have been generally so known in New York and Boston, from which ports alone the evidence in this case comes, it is fair to infer, in the absence of all evidence to the contrary, that they were generally so known throughout the country. In this connection, there is another observation which I deem important. The plaintiff's counsel has suggested that the witnesses for the defendant speak negatively only. That they can say no more than that such articles as the plaintiff's were not known to them under the name of blankets of any kind, before 1846; and that positive evidence is to be believed rather than negative. This is generally true. But this case is peculiar. Where the inquiry is, whether a certain act was done, or a certain event happened, positive evidence from a credible witness that he saw or did it, is, generally, to be preferred to negative evidence, from a witness equally credible, that he did not see it, though present; because both may intend to speak the truth. The act or event, though it occurred, may not have been observed or remembered by him who speaks negatively. But here the question is, whether a certain thing was generally known to those engaged in a particular trade; and when witnesses so engaged testify it was not known to them, this negative testimony tends directly to disprove the fact asserted, and if the witnesses are quite numerous, and their business extensive, their testimony would, if believed, be sufficient to prove, though the plaintiff's witnesses are believed when they testify they knew the fact, yet that the fact was not generally known, for if generally known, it would have been known to the defendant's witnesses as well as to the plaintiff's.

Passing from these preliminary observations, I think there are three inquiries to be made by you: (1) Whether articles, in all particulars like these samples of the plaintiffs, were generally known as Mackinaw blankets, before July, 1846? If not, then (2) were articles, more or less similar to these, known as such blankets, and what are the diversities between these samples, and the articles so known as blankets? And (3) are those diversities material, so as to render the designation of blankets inapplicable to these samples?

There is some evidence from New York, tending to show that articles in all particulars identical with these samples, were known as Mackinaw blankets before July, 1846. (Here the judge detailed this evidence.) If this satisfies you that articles identical with the samples, were generally known as Mackinaw blankets, before July, 1846, you need inquire no further. The plaintiff, in that event, is entitled to your verdict. But if you think otherwise, you will then compare the samples with what were generally known as Mackinaw blankets before July, 1846, and ascertain the diversities between them. (Here the judge recapitulated the evidence on this subject.)

Having ascertained, to your own satisfaction, what these diversities, if any, are, you are next to inquire whether they are material. In other words, if articles in all particulars like these samples were not generally known in commerce before 1846, are the differences between these samples and what was known as Mackinaw blankets, so material, that these samples, as articles of commerce, differ substantially from what were known as Mackinaw blankets? You have had, from many of the witnesses, opinions upon this question. Some witnesses consider the supposed differences material, and others immaterial. It commonly happens, that when witnesses are allowed to give opinions, they disagree. And though this kind of evidence is admissible in some cases, and should, in proper cases, be considered by the jury, yet whenever the jury have the facts before them, and the matter is one concerning which they feel able to form their own opinions, it is safer and more satisfactory to do so, than to trust to the opinions of witnesses, which are often formed without an exact knowledge of the precise question on which their opinion is required, and often differ, because they understand differently the very terms they themselves employ.

It is asserted by the defendant, that these samples are substantially like some species of coatings, imported before 1846, and known in commerce as Flushings, Pilots, and Petershams. And it is urged, that though they came in pieces of twenty yards and upwards, and these are in lengths of four yards only, this difference is not sufficient to exempt these from paying a duty of thirty per centum. And it is further urged, that the stripe, said

to have been borne on Mackinaw blankets, before 1846, has been omitted from these samples to adapt them more perfectly to be used as coatings. On the other side those positions are denied, and it is said the stripe was merely an ornament, and that the taste of customers having changed, it has been left off, but that such a change does not affect the essential character of the thing.

I am not prepared to say, that because you may be of opinion that the fabric of these samples is substantially like coatings, therefore they are necessarily not to be deemed blankets; for the case is not to be determined simply by an examination of the fabric. For aught I know, the fabric of some kinds of coatings may have been like the fabric of Mackinaw blankets. Yet, undoubtedly, any difference between the fabric of these samples, and of things known as Mackinaw blankets before July, 1846, are important for your consideration; and if those differences assimilate these articles to coatings, they become still more important. Neither can I say, that the omission of the stripe, though designed for an ornament, is immaterial. That is for you to determine.

It is urged also, that the use of these fabrics for garments, does not change their character or designation. This is true. But in considering whether any differences between these samples is material, the practical effects of these differences is not to be overlooked. Though a blanket be used to make a garment, it is, nevertheless, till cut up, a blanket. But it does not follow, that a fabric somewhat like a blanket, but made different from one, in order to adapt it better to be made into a garment, is also a blanket. The objects of the change, as well as its nature, should be considered.

And upon this part of the case, my instruction to you is, that if you find articles identical with these samples were not known in commerce before July, 1846, but articles similar to these, with the exception that they bore a stripe or heading, had been generally known as blankets, had been used for making coats, and, to the extent they were so used, took the place of manufactures of wool, on which was paid a higher duty than on blankets, and if you further find that the omission of the stripe, taken in connection with any other differences which you may find, does make a substantial change in the article, as an article of commerce, by adapting it more perfectly to be used for making garments, thus adapting it more perfectly to the uses of those fabrics, which, under this law, are denominated manufactures of wool; and if you further find, that before the tariff act of 1846, fabrics, substantially like these samples, without a stripe, had been imported into the United States in pieces of about twenty yards and upwards, and entered at the custom-house, and known in commerce, not as blankets, but as manufactures of wool, then the absence of the stripe makes

a material change in the article, and it is not one kind of blanket, and is not provided for otherwise than as a manufacture of wool, in the tariff act of 1846. (The judge then recapitulated and explained this instruction.)

The jury returned a verdict for the defendant.

After verdict, the plaintiffs moved for a new trial, assigning as the cause, that the last paragraph of the above instructions, beginning with the words, "and upon this part of the case," was erroneous.

CURTIS, Circuit Justice. To judge of the correctness of that part of the instructions to the jury, of which the plaintiffs complain, it is necessary to observe to what particular point it related, and what facts it assumed to have been found by the jury, before it would be applicable to the case. The jury had previously been instructed that, if articles, identical with the plaintiffs' samples, had been generally known in commerce, under the designation of blankets, before the passage of the tariff act of 1846, they need inquire no further, but should return a verdict for the plaintiffs. But if they should not so find, they must then inquire what were the diversities between the plaintiffs' samples and articles, so known as blankets; and whether those diversities were material. And the instruction, which forms the ground of this motion, related solely to this question of the materiality of these differences.

It appears, not only from its connection, and by what had previously been said, but in express terms, that the jury have found that articles identical with the plaintiffs' samples were not generally known in commerce, as blankets, before 1846; that one diversity was the absence of the stripe or heading; that the fabric of the samples was substantially like cloths imported in pieces of twenty yards and upwards, and generally known in commerce, before 1846, not as blankets, but as manufactures of wool; and that the omission of the stripe, taken in connection with any other differences the jury might find, did make a substantial change in the article, as an article of commerce. And the instruction is, that if the jury should find these facts, then, although witnesses had given their opinion that the omission of the stripe was immaterial, yet it was in point of law material; and these samples were not to be deemed blankets within the meaning of the tariff act of 1846.

I do not think the plaintiffs can complain of this instruction. To see precisely what its effect was, it is necessary to observe that the question was, whether these samples, if imported before the tariff act of 1846, would have been generally known in commerce as blankets. Now, suppose this question had been presented on a statement of those facts which the jury are taken to have found. The first difficulty to be encountered by the plaintiffs would have been, that these samples, if imported before 1846, would not have been generally known at all, by any name. They would have been a novelty. But still, it would be urged, they are so like blankets, that they may come under that designation. But if they are substantially like coatings in their fabric, and if they are substantially different from blankets, as articles of commerce, how can they be denominated blankets? Why should they not be deemed to be included by the law under that description of fabrics which they substantially resemble; and why should they be included in the name of blankets, from which they substantially differ?

I think some obscurity has been thrown over the case by the assumption that the jury were instructed that, if the omission of the stripe facilitated the making into garments, then it was material. But this is not the effect, any more than the terms of the instruction; which was, that it was material, under the condition stated, if it worked a substantial change in the thing as an article of commerce. It is true the attention of the jury was drawn to the effect of this change, by which, as the evidence strongly tended to prove, the thing was better adapted to the uses of coatings; but this was done in such a manner as to restrict, rather than enlarge, the field of inquiry, when the jury were considering whether the omission of the stripe made a substantial change in the article, as an article of commerce; and so was favorable to the plaintiffs.

The instruction was: "If they should find that the omission of the stripe, taken in connection with any other differences which they might find, made a substantial change in the article, as an article of commerce, by adapting it more perfectly to be used for the making of garments, and to the uses of those fabrics which, under this law, are denominated manufactures of wool," &c. Now, it would, in my opinion, have been correct, to leave them to find whether the change was substantial, for any cause; but as the evidence pointed strongly to this cause, and to no other, I thought the instruction should draw their attention to it, to the exclusion of all others; and this was the reason why it was thus mentioned.

It is urged by the plaintiffs' counsel, that in all other cases in the books, the question has been left broadly to the jury, whether the articles bore a certain commercial designation. This is generally true; but so this case was left to the jury. It was only in the event that they should come to the conclusion there were diversities between these samples and what were known as blankets, and it should thus be necessary for the jury to decide whether these diversities were material, that the instruction was to be applied. It is further urged, that this question of the materiality of these diversities should have been decided by the jury, upon the opinions of experts. I think otherwise. I believe the ex-

perience of all concerned in the administration of justice tends to the conclusion that this species of evidence is less satisfactory than any other; and it is a common remark, that where there is any room for a difference of opinion, experts, in about equal numbers, will generally be found testifying on each side. To make revenue cases necessarily and always depend on such evidence, would greatly increase the uncertainty of their results, and strongly tend to render the application of the revenue laws variable, unequal, and consequently unjust. It may not be practicable always to avoid dependence on such evidence, in this class of cases; but it is not easy to see how it had any proper place in this case. Experts are usually called in revenue cases, to say that they have or have not known articles, samples of which are shown, under a particular denomination. This is a mere matter of fact. True, it involves a mental comparison between the samples and the articles previously known. But so does every question of identity. The same comparison is made when a witness swears to a prisoner, or an article stolen from him. But when it is ascertained that there are diversities between the samples and all things previously known, why should a witness be allowed to give an opinion that the diversities are not material. He has had no experience, and can have no particular skill upon this question; for the diversities are admitted to be novel, and he cannot have positive knowledge what effect may be attributed to them.

Besides, the real question is, what effect is attributed to them by the revenue law? Suppose any number of witnesses should swear that the difference between a coat embroidered with gold lace, and one not thus embroidered, was not material, or that plaster of Paris, ground, was not materially different from the same article unground,—such testimony could have no effect, because the law makes these differences material. And the true question, under this motion for a new trial, is, whether a diversity between these samples and blankets, which differs them, substantially, as articles of commerce, from blankets, and adapts them to the uses of coatings, which are subject to a higher rate of duty than blankets, and leaves no substantial difference between the samples and coatings, except that the former come in pieces of four yards, and the latter in pieces of twenty yards, is or is not a material diversity between the samples and blankets, under the revenue laws. And my opinion is, that it is, in point of law, a material diversity.

To hold otherwise, would leave the revenue law open to evasions, which I do not think should be permitted. If the mode of manufacturing an article, which is named in the revenue law and subjected to a duty of twenty per cent., is so changed as to make it substantially a different thing, viewed as a commodity of commerce, and the purpose and effect of that change are to adapt the article to take the place and serve all the uses of another article, on which a higher rate of duty is imposed by law, I am prepared to say, that, in point of law, the article, thus changed, is not entitled to be admitted under the name appropriated in the law to articles not thus changed. In my opinion, its legal identity is destroyed.

I have not overlooked the argument, that if it was intended to be asserted that these samples were substantially coatings, that question should have been left to the jury; and that, under the instruction, the jury cannot be taken to have found they were known as coatings, but only that, so far as respects their fabric, they were substantially like what were known as coatings. It is true this is all the jury have found on this point. But I do not consider the true question was whether these samples were known as coatings, but whether they were known as blankets. They may differ, substantially, from both; and then, being a manufacture of wool, and not otherwise provided for as blankets, they were liable to a duty of thirty per centum.

The motion for a new trial must be overruled, and judgment rendered on the verdict.