## AMY *v.* WATERTOWN. (No. 2.)

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE WESTERN DISTRICT OF WISCONSIN.

No. 197. Argued March 13, 1889. — Decided April 8, 1889.

The general rule respecting statutes of limitation is that the language of the act must prevail, and that no reason based on apparent inconvenience or hardship will justify a departure from it.

Cases considered in which courts of equity and some courts of law have held that the running of the statute was suspended on the ground of fraud.

Cases considered in which courts of law have held the operation of the statute suspended for want of parties, or because the law prohibits the bringing of an action.

Inability to serve process upon a defendant, caused by his designed elusion of it, is no excuse for not commencing an action within the prescribed period.

THIS was an action to recover upon bonds issued by a municipal corporation. Judgment that the cause of action was barred by the statute of limitations. The plaintiffs sued out this writ of error. The case is stated in the opinion.

*Mr. George P. Miller* for plaintiffs in error.

*Mr. George W. Bird* and *Mr. Daniel Hall* for defendant in error.

MR. JUSTICE BRADLEY delivered the opinion of the court.

This is an action for a money demand brought by the plaintiffs in error against the defendant, the city of Watertown.

A summons was sued out against the city on the 19th of June, 1883, and served by the marshal on the 26th of the same month by delivering a copy to the city clerk, the city attorney, and to the last elected chairman of the board of street commissioners. Appearance to the action was entered by the attorneys of the city, and a copy of the complaint was demanded. The complaint was duly filed, and set forth the issue by the city, of three bonds for one thousand dollars each, bearing date respectively the first day of June, 1856, and payable on the first day of January, 1877, with interest thereon at the rate of eight per cent per annum, payable semi-annually, and with coupons annexed, to represent the successive instalments of interest. The plaintiffs prayed judgment for the amount of said bonds and of the last ten coupons on each. The defendant, in its answer, set up as a defence that the several causes of action did not, nor did either of them, accrue within six years next before the commencement of the action; that being the time within which actions upon bonds and coupons must be commenced in the State of Wisconsin. To this answer the plaintiffs replied (by way of an amendment to their complaint) as follows:

"Said plaintiffs allege, on information and belief, that the said defendant, the city of Watertown, and the officers, agents, and citizens and residents of said city did, subsequent to the first day of March, A.D. 1873, conspire together, and with each other, and ever since have conspired together, and with each other, for the purpose and with the preconceived intent and design to defraud these plaintiffs and all other owners and holders of the bonds and coupons to such bonds issued by said city, and to prevent these plaintiffs and other holders and owners of said bonds and coupons from obtaining the service of process on said city.

"Said plaintiffs further allege, on information and belief, that each year since the first day of March, 1873, a mayor of said city was elected, as required by law, but said mayor each year, with the intent and design as aforesaid, qualified as hereinafter mentioned and immediately thereafter placed his resignation in the hands of the city clerk of said city, to

be filed by him in case of emergency, and to take effect accordingly.

"Said plaintiffs further allege, on information and belief, that each year since the first day of March, 1873, after the mayor and members of the common council had been elected, they and each of them failed to qualify until they had assembled together in a secret place with locked doors, unknown to the people at large and to these plaintiffs, and with persons on watch to inform them of the approach of any person or persons, and then and there, if unmolested, the mayor and the members of the common council, qualified as required by law, transacted for said defendant city certain necessary business, and thereafter immediately filed with the city clerk of said city their respective resignations, to take effect immediately, and which resignations went immediately into effect.

"Said plaintiffs further allege that since the first day of March, 1873, they have employed attorneys and agents for the purpose of ascertaining who was the mayor or acting mayor or chairman of the common council or chairman of the board of street commissioners and for the purpose of having process served on said city; but owing to said conspiracy, as these plaintiffs are informed and believe, since the first day of March, 1873, there has been no mayor of said city except each year for a few hours at such secret and concealed meetings, and the common council of said city, with the said fraudulent intent and design, has failed each year to elect a chairman of said common council, and since said last-mentioned date there has been no person who was acting mayor and no chairman of the board of street commissioners.

"Said plaintiffs further allege that, notwithstanding they have used due diligence and have hired attorneys and agents for the purpose of having process served on said city, they have been unable to this date to serve or have served the summons in this action on the mayor of said city or on that person who by law should exercise the functions of mayor of said city."

The defendants thereupon filed an amended answer, again setting up the statute of limitations, and averring that the

plaintiffs did not commence, or attempt to commence, said action, or use any diligence whatever to commence the same, before the 19th of June, 1883.

To this answer the plaintiffs demurred, and the court below overruled the demurrer and allowed the plaintiffs twenty days to file such further pleadings as they might deem proper. As the plaintiffs failed to plead further, judgment was entered for the defendant. To this judgment the present writ of error is brought.

It will be observed that the plaintiffs do not pretend that they commenced the action within the legal period of six years after the several causes of action accrued; and their excuse for not doing so is, that it would have been of no use, on account of the alleged conspiracy of the officials and residents of Watertown to prevent a service of process, by the resignation of the mayor, and by the secret meeting of the common council before qualifying and organizing, and by their immediately resigning their offices after the transaction of some necessary business.

The question is, whether such proceedings on the part of the city officials furnish an excuse for not commencing the action within the time limited by law? The statute itself specifies several exceptions to its operation, as 1st, when the defendant is out of the State; 2d, when he is an alien subject or a citizen of a country at war with the United States; 3d, when the person entitled to bring the action is insane, or under age, or imprisoned on a criminal charge; 4th, when the commencement of an action has been stayed by injunction or statutory prohibition; 5th, where the action is for relief on the ground of fraud, the statute does not begin to run until the discovery by the party aggrieved of the facts constituting the fraud. The question, therefore, is, whether the courts can create another exception, not made by the statute, where the party designedly eludes the service of process? Have the courts the power thus to add to the exceptions created by the statute? That is the precise question in this case.

It is said by Mr. Justice Strong, in *Braun* v. *Sauerwein,* 10 Wall. 218, 223, "It seems, therefore, to be established, that

the running of a statute of limitation may be suspended by causes not mentioned in the statute itself." The observation is undoubtedly correct; but the cases in which it applies are very limited in character, and are to be admitted with great caution; otherwise the court would make the law instead of administering it. The general rule is that the language of the act must prevail, and no reasons based on apparent inconvenience or hardship can justify a departure from it.

The courts of equity, however, from an early day, held that where one person has been injured by the fraud of another, and the facts constituting such fraud do not come to the knowledge of the person injured until some time afterward, the statute will not commence to run until the discovery of those facts, or until by reasonable diligence they might have been discovered. *Booth* v. *Warrington*, 4 Bro. P. C. ed. Toml. 163; *South Sea Co.* v. *Wymondsell*, 3 P. Wms. 143; *Hoveden* v. *Ld. Annesley*, 2 Sch. & Lef. 607, 631, etc.; *Blennerhassett* v. *Day*, 2 Ball & Beatty, 104, 129; Mitf. Ch. Pl. ed. Jeremy, 269; Blanshard on Limitations, 81; Wood on Limitations, § 58, p. 114, § 274, p. 586; Angell on Limitations, c. 18, 2d ed. p. 188. A *dictum* of Lord Mansfield in *Bree* v. *Holbech*, 2 Doug. 654, 656, that "there may be cases which fraud will take out of the statute of limitations," raised the question whether undiscovered fraud might not be set up by way of replication to a plea of the statute in actions at law. Wilkinson on Limitations, 115. But this suggestion never obtained the force of law in the English courts. *Brown* v. *Howard*, 2 Brod. & Bing. 73; *Imperial Gas Co.* v. *London Gas Co.*, 10 Exch. 39, 42, 45; *Hunter* v. *Gibbons*, 1 H. & N. 459, 464. Vice-Chancellor Wigram granted relief in equity in the case of *Blair* v. *Bromley*, 5 Hare, 542, (*S. C.* 2 Phillips, 354,) on the express ground that the acts of fraud were not discovered till within six years of bringing the suit, and that the remedy at law was gone; and his decree was affirmed by Lord Cottenham.

In this country, however, in many of the States, especially in those States which never had a separate system of equity, the statute has been held not to run, in cases of fraud, until

the discovery of the facts constituting the fraud; whilst in other States, in the absence of a statutory provision on the subject, the English doctrine has been adhered to. See Angell on Limitations, c. 18, and Wood on Limitations, § 58. In most of the States, however, statutes have finally been passed, suspending the statute in cases of fraud until the facts have been discovered, or might have been discovered by reasonable diligence. See the various statutes referred to in Wood on Limitations, c. 22.

From this brief review it appears that concealment of fraud has by many courts been considered good ground for suspending the statute of limitations, even in actions at law. But this is a very different thing from attempting to avoid service of process, and cannot be cited as aiding in any way the adoption of such a rule in the latter case. Concealment of fraud prevents a party from knowing that he has been injured and has a cause of action. He cannot take any steps to obtain redress. But when a party knows that he has a cause of action, it is his own fault if he does not avail himself of those means which the law provides for prosecuting his claim, or instituting such proceedings as the law regards sufficient to preserve it.

There is one class of cases which is excluded from the operation of the statute by act of law itself, of which the case in which Mr. Justice Strong made the remark referred to is one. This class embraces those cases in which no action can be brought at all, either for want of parties capable of suing, or because the law prohibits the bringing of an action. In such cases the general law operates as a qualification, or tacit condition of the particular statute. Thus, if a man dies after commencing an action, and it abates by his death, and the limitation of time for bringing another action expires before the appointment of an executor or administrator, — the courts have held, that as there is no person to bring suit, the statute is suspended for a reasonable period, in order to give an opportunity to those interested to have the proper representative appointed. Blanshard on Limitations, pp. 104–112; Wood on Limitations, 11, n. 4. So where a citizen of one country has a cause of action against a person who resides in another country

at war with his own, the law of nations forbids any intercourse between them, and suspends all suits and actions by the one against the other: and, therefore, the time, during which the right to sue is thus suspended, is not reckoned as any part of the time given by the statute of limitations for bringing an action. *Hanger* v. *Abbott*, 6 Wall. 532 ; *The Protector*, 9 Wall. 687 ; Wood on Limitations, 9, 10. Besides this general exception created by act of law, it is difficult to find any other ground or cause for suspending the operation of the statute not specified in the act itself.

The answer made by the plaintiffs to the plea of the statute amounts to nothing more than an allegation that the defendant, the city of Watertown, by the acts of its officers, seeks to evade the service of process. Their language is, that the officers and people have conspired together for the purpose of defrauding the plaintiffs, and to prevent them from obtaining service of process. Is it fraud in a debtor to endeavor to evade the service of process? Is it any more fraudulent than it is not to pay the debt? Fraud is not the proper term to apply to such conduct. It may be morally wrong. It may be dishonest; but it is not fraudulent in the legal sense of the term.

Inability to serve process on a defendant has never been deemed an excuse for not commencing an action within the prescribed period. The statute of James made no exception to its own operation in case where the defendant departed out of the realm, and could not be served with process. Hence the courts held that absence from the realm did not prevent the statute from running. Wilkinson on Limitation, 40 ; *Hall* v. *Wyborn*, 1 Shower, 98. This difficulty was remedied by the act of 4 and 5 Anne, c. 16, § 19, which declares that 'if any person against whom there shall be any cause of action be at the time of such action accrued beyond the seas, the action may be brought against him after his return, within the time limited for bringing such actions. Most of the states have similar acts. The statute of Wisconsin, as we have seen, has a similar provision ; perhaps wider in its scope. That statute, therefore, has expressly provided for the case of

inability to serve process occasioned by the defendant's absence from the State. It has provided for no other case of inability to make service. If this is an omission, the courts cannot supply it. That is for the legislature to do. Mere effort on the part of the defendant to evade service surely cannot be a valid answer to the statutory bar. The plaintiff must sue out his process and take those steps which the law provides for commencing an action and keeping it alive.

*The judgment of the Circuit Court must be affirmed.*