## HECKMAN *v.* KASSING, ADMINISTRATOR.

[No, 11,041.   Filed October 11, 1921.]

1. LIMITATION OF ACTIONS.—*Death of Debtor.*—*Running of the Statute.*—Generally, the death of a debtor does not prevent the running of the statute of limitations, but where there is a period following the death in which no action can be commenced or within which the creditor could not have an administrator appointed, the operation of the statute is suspended during such period.  p. 407.

2. DEATH.—*Absentees.*—*Presumption of Death.*—*Settlement of Estates.*—*Statutes.*—Sections 2747, 2748 Burns 1914, Acts 1911 p. 676, Acts 1883 p. 209, as to the administration of estates of absentees and to presumption of death of absentee, relate exclusively to the settlement of the estates of absentees and do not change the common-law presumption of death as to other transactions.  p. 413.

3. EXECUTORS AND ADMINISTRATORS.—*Absentees.*—*Presumption of Death.*—*Appointment of Administrator.*—For the purpose of settling the estate of an absentee it will be presumed that he has been dead since his disappearance; but until five years after his disappearance, no one is authorized, in view of §2747 Burns 1914, Acts 1911 p. 676, to make application for letters of administration, nor could a creditor during that time have obtained service of process such as would have entitled him to a personal judgment against the absentee.  p. 414.

4. LIMITATION OF STATUTE.—*Running of Statute.*—*Suspension.*—*Action Prohibited by Law.*—Whenever the law creates a condition which prevents a creditor from prosecuting his claim, the statute of limitations does not run during the time such condition continues.  p. 414.

5. LIMITATION OF ACTIONS.—*Absentees.*—*Claims Against.*—*Running of Statute.*—*Suspension until Appointment of Administrator.*—*Statutes.*—Where one was absent and unheard of for more than five years, the statute of limitations did not run against the claim of a creditor of the absentee from the

time he first disappeared to the time when an administrator could have been appointed, which, under §2747 Burns 1914, Acts 1911 p. 676, was five years from the time of disappearance. p. 415.

From Marion Probate Court (11,422); *Mahlon E. Bash,* Judge.

Action by Emma Heckman against the estate of William Bretthauer, an absentee, for whom the defendant, Edmund H. Kassing, had been appointed administrator. From a judgment for defendant, the plaintiff appeals. *Reversed.*

*William A. Ketcham* and *George H. Batchelor,* for appellant.

*William A. Pickens, Linton A. Cox* and *Earl R. Conder,* for appellee.

McMAHAN, J.—This is a claim by appellant against the estate of William Bretthauer, an absentee. The facts as found by the court are in substance as follows: In May, 1915, a petition was filed in the probate court for the appointment of an administrator for the estate of William Bretthauer, wherein it was alleged that on and prior to February 15, 1910, said Bretthauer was a resident of the city of Indianapolis; that on said date he absented himself therefrom and went to parts unknown, and has since remained absent and unheard from. On June 23, 1915, the court found and decreed that said Bretthauer was and had been since February 15, 1910, an absentee, and that an administrator should be appointed for his estate. A few days later the last will and testament of said absentee was probated and appellee appointed administrator with the will annexed. Appellant's claim was filed April 28, 1916. Prior to 1898, Bretthauer had boarded and lodged with appellant's father in the city of Indianapolis and was boarding and lodging with him when the latter moved from

said city.   Said absentee was not related by blood or
marriage to appellant or to any member of her family.
When appellant's father moved from Indianapolis, ap-
pellant with her husband and children moved into the
house which he had occupied.   The absentee continued
to live in the house vacated by appellant's father and
made his home with appellant.   She boarded and lodged
him, did his washing, and gave him such care and at-
tention as he required, from April 1, 1898, to April 1,
1908, when appellant moved from Indianapolis.   The
court also found the value of appellant's services and
that the whereabouts of the absentee subsequent to
1909, was unknown.

The court concluded as a matter of law that appellant
was not entitled to a recovery.   Is appellant's claim
barred by reason of the six-year statute of limitations?
If it is, this cause must be affirmed, but if it is not so
barred then it must be reversed.   Section 294 Burns
1914, §292 R. S. 1881 provides that actions on accounts
and contracts not in writing "shall be commenced within
six years after the cause of action has accrued, and not
afterward."   Section 298 Burns 1914, §296 R. S. 1881
provides that any person being under legal disabilities
when the cause of action accrues, may bring the action
within two years after the disability is removed.   The
phrase "under legal disabilities" as used in this section
is defined in §1356 Burns 1914, §1285 R. S. 1881 to in-
clude persons within the age of twenty-one years, or of
unsound mind, or imprisoned in the state prison, or out
of the United States.   Section 299 Burns 1914, §297
R. S. 1881 provides that the time during which the de-
fendant is a nonresident of the state or is absent on
public business shall not be computed in any of the pe-
riods of limitation, and §300 Burns 1914, §298 R. S.
1881 provides that if any person entitled to bring or
liable to any action, shall die before the expiration of

the time limited for the action, the cause of action shall survive to or against his representatives, and may be brought at any time after the expiration of the time limited, within eighteen months after the death of such person. Section 301 Burns 1914, §299 R. S. 1881 provides for the bringing of a new action where a former action has failed for certain named reasons, and §302 Burns 1914, §300 R. S. 1881 provides that if any person liable to an action conceal the fact from the knowledge of the person entitled thereto, the action may be commenced any time within the period of limitation after the discovery of the cause of action.

It thus appears that under certain conditions the statute of limitations does not bar the action although it is not commenced within the period fixed by the statute. But as said by the court in *Bauserman* v. *Blunt* (1893), 147 U. S. 647, 657, 37 L. Ed. 316, 320: "In the absence of express statute or controlling adjudication to the contrary, two general rules are well settled. 1st. When the statute of limitations has once begun to run, its operation is not suspended by a subsequent disability to sue, * * *. 2d. The bar of the statute cannot be postponed by the failure of the creditor to avail himself of any means within his power to prosecute or to preserve his claim."

In *Amy* v. *Watertown* (1889), 130 U. S. 320, 32 L. Ed. 953, the plaintiff in his complaint attempted to avoid the statute upon the theory that all the officers of the city upon whom service could have been had had entered into a conspiracy with each other and with the citizens of the city to resign and did resign so as to prevent service of process. Plaintiff's contention was that the commencement of an action on his part would have been useless. The court after stating the several exceptions to the operation of the statute, such as the absence of the defendant from the state, said: "The

question, therefore, is, whether the courts can create another exception, not made by the statute, where the party designedly eludes the service of process? Have the courts the power thus to add to the exceptions created by the statute?" After quoting from *Braun* v. *Sauerwein* (1869), 77 U. S. (10 Wall.) 218, 223, where it is said: "It seems, therefore, to be established, that the running of a statute of limitation may be suspended by causes not mentioned in the statute itself," the court continuing said: "The observation is undoubtedly correct; but the cases in which it applies are very limited in character, and are to be admitted with great caution; otherwise the court would make the law instead of administering it. The general rule is that the language of the act must prevail, and no reasons based on apparent inconvenience or hardship can justify a departure from it. *   *   *

"From this brief review it appears that concealment of fraud has by many courts been considered good ground for suspending the statute of limitations, even in actions at law. But this is a very different thing from attempting to avoid service of process, and cannot be cited as aiding in any way the adoption of such a rule in the latter case. Concealment of fraud prevents a party from knowing that he has been injured and has a cause of action. He cannot take any steps to obtain redress. But when a party knows that he has a cause of action,-it is his own fault if he does not avail himself of those means which the law provides for prosecuting his claim, or instituting such proceedings as the law regards sufficient to preserve it.

"There is one class of cases which is excluded from the operation of the statute by act of law itself, of which the case in which Mr. Justice Strong made the remark referred to is one. This class embraces those cases in which no action can be brought at all, either for want

of parties capable of suing, or because the law prohibits the bringing of an action. In such cases the general law operates ás a qualification, or tacit condition of the particular statute. Thus, if a man dies after commencing an action, and it abates by his death, and the limitation of time for bringing another action expires before the appointment of an executor or administrator, —the courts have held, that as there is no person to bring suit, the statute is suspended for a reasonable period, in order to give an opportunity to those interested to have the proper representative appointed. Blanshard on Limitations, pp. 104-112; Wood on Limitations, 11, n. 4. So where a citizen of one country has a cause of action against a person who resides in another country at war with his own, the law of nations forbids any intercourse between them, and suspends all suits and actions by the one against the other; and, therefore, the time, during which the right to sue is thus suspended, is not reckoned as any part of the time given by the statute of limitations for bringing an action. *Hanger* v. *Abbott,* 6 Wall. 532; *The Protector,* 9 Wall. 687; Wood on Limitations, 9, 10. Besides this general exception created by act of law, it is difficult to find any other ground or cause for suspending the operation of the statute not specified in the act itself. * * *

" Inability to serve process on a defendant has never been deemed an excuse for not commencing an action within the prescribed period." And after referring to the fact that the statute of Wisconsin provides that the statute shall not continue to run while the defendant is out of the state, it is said: "That statute, therefore, has expressly provided for the case of inability to serve process occasioned by the defendant's absence from the State. It has provided for no other case of inability to make service. If this is an omission, the courts cannot

supply it. That is for the legislature to do. Mere effort on the part of the defendant to evade service surely cannot be a valid answer to the statutory bar. The plaintiff must sue out his process and take those steps which the law provides for commencing an action and keeping it alive." But there are exceptions to the rule that when the period of limitation has once commenced to run, it will not be suspended, except where the statute itself so provides. Statutes of limitations are based upon the presumption that one having a legal claim will not delay enforcing it beyond a reasonable time, if he has the power to bring suit upon it. But the basis of the presumption is gone whenever the right or ability to resort to the courts or to bring the action does not exist. In such cases the creditor has not the time given him by the statute within which to bring his suit, and the time during which he is so prevented from suing upon his claim will not be included in computing the period of limitation.

It is also a general rule that the death of the debtor does not prevent the running of the statute. But where there is a period of time following the death of

1. the debtor in which no action can be commenced or within which the creditor could not have an administrator appointed, the operation of the statute is suspended during such period. *Bauserman* v. *Blunt*, *supra*. The time so prescribed following the death of the debtor is a period of limitation as to debts owing by the debtor at the time of his death, distinct and separate from that fixed by the general statute of limitations. It is not operative until the death of the debtor, and then supersedes the general statute of limitations, and stops the running thereof as to such debts. *Alice E. Mining Co.* v. *Blanden* (1905), 136 Fed. 252. In *Savage* v. *Scott* (1876), 45 Iowa 130, in discussing the statute and the suspension of the same by reason of

nonresidence and death, it is said: "The statute ceases to run upon the debtor becoming a non-resident; when that disability is removed it resumes its operation. To be a non-resident of this State, one must be a resident elsewhere. The word non-resident implies that one so described holds a residence in another place. But we cannot say of a deceased person that he is a non-resident, for he holds a residence nowhere. The disability of non-residence is removed in case of death. * * * The creditor has it in his power, if property of the estate be found here, to cause an administrator to be appointed, without delay, against whom proceedings may be at once instituted. His legal remedy, which was suspended by the debtor becoming a non-resident, is revived at the debtor's death. From the moment the remedy is revived, the statute of limitations begins again to run."

*Jackson* v. *Fidelity & Casualty Co.* (1896), 75 Fed. 359 was an action on a contract of indemnity, one provision of which was that no suit should be brought to recover any loss insured by the contract, unless the same was commenced within twelve months after discovery of cause of action. The court after holding that limitation of the time of bringing suit in contracts of insurance are not to be applied with the same degree of rigidity as statutes of limitations, said: "Where the performance of conditions precedent are, without fault or laches of the insured, rendered impossible by the acts of the insurer, or even by act of God or of the government or of the courts, such limitations are not to be applied."

In *Devereaux* v. *City of Brownsville* (1887), 29 Fed. 742, the legislature had repealed the charter of the city and later reorganized the territory into a "taxing district," during which time there was no organization that could be sued. The statutory period for commencing the action expired during this period. The court held

that such period should be excluded from the period in which the action should be commenced, precisely as the time occupied by war was excluded, and for the same reason, saying: "If a state, with the deliberate and confessed purpose of doing that, repeals the charter of a municipal corporation to enable it to evade or avoid the writ of *mandamus* to enforce judgments against it, thereby disable the plaintiff from proceeding in the case, the time of disability should not be computed in the period of the statute of limitations. We are aware of the stringency of the rule that courts will not ingraft upon the statute exceptions growing out of mere equitable considerations of hardship or injustice, and the only doubt we have is whether the plaintiffs here are not put to a bill in equity to perpetually enjoin the defendant corporation from pleading the statute, as one might be for relief against any fraudulent contrivance of a defendant to arrest or delay the plaintiff's proceeding against him. But since the act of arrest complained of here is that of the state itself, by its own legislation, and through its paramount authority, which none can resist, we find no difficulty in implying from the new legislation and governmental conduct of the state an intention to exclude the time of disability from the statute, as is done in case of war. *Hanger* v. *Abbott,* 6 Wall. 532; *U. S.* v. *Wiley,* 11 Wall. 508, 513." It is the loss of the ability to sue, rather than the loss of the right, that stops the running of the statute.

In *Broadfoot* v. *Fayetteville* (1899), 124 N. C. 478, 70 Am. St. 610, after calling attention to the authorities holding that when the statute once begins to run no subsequent happening or event can obstruct its course, and that when the legislature has provided certain exceptions when the statute should not run, the courts cannot add exceptions to those named by the legislature, it is said: "But we are satisfied that when

these decisions were made the court had in mind only cases where the ability to bring suit on the part of the plaintiff, or some one for him, had not been taken away by law—by statute—and where the Courts were open for the hearing of all matters of which they had jurisdiction. Statutes of Limitation are founded on the idea that one who has a cause of action will undertake to enforce it within a reasonable time if the courts are open to him. To prevent confusion and to produce certainty as to what is reasonable time, the law (the Statutes of Limitation) has fixed the periods within which actions must be brought. These views are so well expressed in the case of *United States* v. *Wiley*, 78 U. S. 508, that we cannot do better than quote a part of the opinion in that case: 'But it is the loss of the ability to sue, rather than the loss of the right, that stops the running of the statute. The inability may arise from a suspension of right, or from the closing of the courts; but, whatever the original cause, the proximate and operative reason is that the claimant is deprived of the power to institute his suit.' "

In *Hall* v. *Brennan* (1892), 64 Hun 394, 19 N. Y. Supp. 623, the maker of a note died in 1887, but letters testamentary were not issued to his executors until 1889, owing to a contest of probate of his will. It was there held that the intervening time was to be excluded in computing the running of the statute of limitations, under a statute providing for the exclusion of time during which action is stayed by "statutory prohibition." The inability to bring suit in that time being in effect a statutory prohibition. *Lieberman* v. *First Nat. Bank* (1900), 2 Pennewill (Del.) 416, 82 Am. St. 414, 45 Atl. 901 was a suit against a surety on the bond of a bank teller. The question was what effect did the fraud of the principal in concealing the cause of action have on the statute of limitations. In holding that conceal-

ment of the cause of action prevented the running of the statute, the court said: "The question whether the fraudulent concealment of the existence of the cause of action will hinder the operation of the statute of limitations, is one which has been much discussed and upon which there has been a radical difference of opinion. On one side it is said the statute, in plain terms, fixes the time when action shall be brought after the cause of action accrues; that the cause of action accrues when the act is done and the fraud is consummated; and from that time, and not from the time the plaintiff discovered it, the statute interposes as a protection; that while courts of equity may make an exception in cases of fraud, because they are not strictly bound by the statute, yet for courts of law to do the same is to except from the law cases which are plainly within its terms.

"On the other side, it is said, the statute must be expounded reasonably, so as to suppress and not to extend the mischiefs it was intended to cure; that it was intended to suppress fraud by preventing unjust claims from starting up, after a great lapse of time, when evidence by which they might be repelled was forgotten or had ceased to exist; that it should not, therefore, be so construed as to encourage fraud by enabling those who, through falsehood or deceit, have managed to keep one in ignorance of the fact that he had a cause of action, to take advantage of their own wrong doing under a plea of the statute.

" 'We think,' says the Court, in *Reynolds* v. *Hennesy*, 23 Atl. 639 (R. I.), 'the latter position is best sustained by reason and authority. It certainly is in the line of justice and morality. The only objection to it is that it introduces an exception into the statute.' The same objection lies to claims in favor of the Government and to cases of new promise. The statute does not take away the debt, but simply affects the remedy. Hence,

if one by fraud conceals the fact of a right of action, it is not ingrafting an exception on the statute to say that he is not protected thereby, but it is simply saying that he was never within the statute, since its protection was never designed for such as he. By fraud he has put himself outside of its pale. Whether this be taken as an exception or only a limitation of the statute, it rests upon sound reason and just policy. *Reynolds* v. *Hennesy*, 23 *Atl.*, 639; *Bree* v. *Holbeck*, 2 *Doug.*, 655 (Lord Mansfield) ; *South Sea Co.* v. *Wymonsdell*, 3 P. *Wms.* R., 143.

"Such a construction has been so frequently applied to the statute that it is now said to have the weight of authority in its favor."

In *Brown* v. *Rollins* (1863), 44 N. H. 446, where the debtor left the state and went to California leaving his wife and child upon his homestead farm in New Hampshire, and remained there without returning for eleven years, it was held that the time he was absent was to be excluded in the computation of time within which an action should be commenced. In *Ward* v. *Cole* (1855), 32 N. H. 452, the debtor left the state with his family on a voyage at sea, expecting to be absent three years, leaving his property in the care of his father-in-law, but never returned, having died before the expiration of the three years, it was held that his absence was such as to prevent the statute running. In *Gilman* v. *Cutts* (1851), 23 N. H. 376, it is held that a debtor need not resort to attachment, and the fact that a non-resident debtor has property in the state does not affect the running of the statute. The debtor had been absent from the state several times for a number of months at a time and it was held that the statute ceased to run during each and all of the absences, if they were such that legal service could not be had. In *State* v. *Furlong* (1883), 60 Miss. 839, the defendant was a bachelor and never

had any home or settled establishment in the state. He boarded at a hotel, and when he left there was no place at which and no person with whom a summons could be left so as to give him legal notice of the commencement of suit. He absented himself from the state for two years. The court held that the statute did not run during his absence, saying: "The law will never allow a debtor to so conduct himself as to prevent the possibility his being sued, and at the same time claim that the Statute of Limitations shall run in his favor." Citing *Hackett* v. *Kendall* (1851), 23 Vt. 275; *Gillman* v. *Cutts, supra; Langdon* v. *Doud* (1865), 10 Allen (Mass.) 433, 83 Am. Dec. 641.

Let us now turn our attention to the situation in which appellant is placed. The facts in this case are peculiar. The statute began to run against her claim in April, 1908. Bretthauer, as the court finds, disappeared from his last and usual place of residence in 1910, and went to parts unknown, and has ever since remained absent, unheard from, and his whereabouts unknown. In June, 1915, proceedings were instituted for the purpose of having him declared an absentee and having an administrator appointed for his estate, alleging his disappearance and that he had left an estate which was suffering for want of attention. The probate court found the facts as alleged, and fixed the date of his disappearance as February 15, 1910.

Section 2747 Burns 1914, Acts 1911 p. 676, provides that when any resident of this state shall have absented himself from his usual place of residence and 2. gone to parts unknown for a period of five years without having made sufficient provision for the care and management of his property and when such facts shall be made to appear to the court, it shall be presumed and taken by the court that such person is dead and the court shall have jurisdiction over the es-

tate of such person in the same manner and to the same extent as if he were dead. Section 2748 Burns 1914, Acts 1883 p. 209, provides that such presumption of death shall relate back to the time of the first disappearance of such absentee, and that it shall be presumed and taken by all courts that such absentee was dead on the date of his first disappearance. These sections relate exclusively to the settlement of the estates of absentees and do not change the common-law presumption of death as to other transactions. *Connecticut Mut. Life Ins. Co.* v. *King* (1911), 47 Ind. App. 587, 93 N. E. 1046. We here have a case where the statute of limitations had commenced to run before the absentee disappeared. At the time of his disappearance the statute had over four years to run before it could be successfully set up as a bar. Whether Bretthauer is dead or alive is not 3. known. For the purpose of settling his estate it is presumed that he has been dead since his disappearance in February, 1910. Had he actually died at that time, an executor or administrator of his estate could have been appointed and appellant's claim filed within the six-year period. But, being an absentee, there was no statutory provision for the appointment of an administration upon his estate until five years after his disappearance. No one was authorized to make application for letters of administration within that period. No creditor during that time could have obtained service of process such as would have entitled him to a personal judgment against the absentee.

Whenever the law creates a condition which prevents a creditor from prosecuting his claim, it is only common justice to hold that so long as that condition 4. of prohibition exists, the statute of limitations shall not run. By so holding we are not creating an exception to the statute not already recognized by the great weight of authorities. We are doing nothing

more than applying the well recognized rule, that the running of the statute is suspended during the period of time when the creditor is by law prevented from suing.

The appellant under the law was given six years in which she could bring suit for the collection of her claim against the absentee. During the running of the six-year period, such a condition arose as prevented her from bringing an action to enforce the collection of her claim. Suppose that appellant had been indebted to the absentee on a promissory note which was five years past due when the latter disappeared in 1910, so that at the time when the executor in this case was or could have been first appointed, the note had been due for more than ten years, could the appellant have successfully pleaded the ten-year statute as a bar, when under the facts as found, there was no one who could have brought suit on the note? The absentee is presumed to have been dead, but since he is only presumptively dead, no administrator could have been appointed within the ten-year period allowed by the statute within which to have commenced an action on the note. Since there was no person who could be sued during the five years immediately following the disappearance of Bretthauer, we hold that the statute of limitations did not run from the time when he first disappeared to the time when an administrator of his estate could under the law have been appointed.

The judgment is, therefore, reversed with directions to the court to restate its conclusions of law in harmony with this opinion and to render judgment in accordance therewith.