[No. 44587.   En Banc.   February 9, 1978.]

RALPH D. ELLIOTT, as Administrator, Appellant, v. PAUL C. KUNDAHL, ET AL, Defendants, C. DIRK PETERSON, ET AL, Respondents.

640

*Geraghty, Geraghty, Vanderhoef & Sawyer,* by *Kenneth D. Vanderhoef,* for appellant.

*Robert D. Morrow* and *James R. Dickens* (of *Karr, Tuttle, Koch, Campbell, Mawer & Morrow*), for respondents.

DOLLIVER, J.—This appeal was commenced following the trial court's granting of the defendants' motion for an involuntary nonsuit. We accepted certification from the Court of Appeals, Division One.

Appellant Ralph D. Elliott, administrator of the estate of Mary Ellen Elliott, brought an action for the wrongful death of his wife against Paul Kundahl, M.D., an anesthesiologist with a separate medical practice, the Crown Hill

Dental Center, P.S., and C. Dirk Peterson, D.D.S. Mary Ellen Elliott died on March 27, 1973, allegedly as a result of the malpractice of the respondents. After Dr. Kundahl administered general anesthesia to Mrs. Elliott at the Crown Hill Dental Center, Dr. Peterson began the necessary dental work. Complications developed and Mrs. Elliott was taken to the hospital where she died.

Trial was set for January 5, 1976. On December 31, 1975, Elliott and Dr. Kundahl entered into a covenant not to sue in consideration of $125,000, and the claim against Kundahl was thereafter dismissed. The court ruled that evidence of the partial settlement would be admissible at the trial for the purpose of determining whether this amount was "reasonably compensatory", that is, whether the covenant not to sue was in fact a release.

The trial court disposed of the following motions which are relevant to this appeal: Dr. Peterson's and Crown Hill's motions for a voluntary nonsuit (cross claims for indemnification) against Dr. Kundahl were granted. The defendants' motions to amend their pleadings, to assert that the covenant not to sue constituted a release or that the $125,000 was reasonably compensatory, were granted. The plaintiff's motion for a mistrial and voluntary nonsuit were denied. Plaintiff's motion to prevent the use or mention of the covenant not to sue or the payment was denied. The defendants' motion for involuntary dismissal with prejudice was granted.

The first issue before us is whether the trial court erred in denying plaintiff's motion for a nonvoluntary nonsuit. It is the plaintiff's contention that he had an absolute right to a voluntary nonsuit under the following provision:

(a) . . .

(1) . . . [A]ny action *shall* be dismissed by the court:
. . .

(B) By Plaintiff Before Resting. Upon motion of the plaintiff at any time before plaintiff rests at the conclusion of his opening case.

(Italics ours.) CR 41(a)(1)(B).

The trial court denied the motion without prejudice because it found defendants' claim—that the covenant not to sue constituted a release or that the settlement was reasonably compensatory—constituted an affirmative defense. They relied upon *McKay v. McKay*, 47 Wn.2d 301, 287 P.2d 330 (1955), in which this court recited the language of RCW 4.56.120 in holding that no action shall be dismissed upon the motion of the plaintiff if the defendant has interposed a setoff as a defense or seeks affirmative relief growing out of the same transaction or sets up a counterclaim. That statute has since been superseded by CR 41(a)(3), which states:

> If a counterclaim has been pleaded by a defendant prior to the service upon him of plaintiff's motion for dismissal, the action shall not be dismissed against the defendant's objection unless the counterclaim can remain pending for independent adjudication by the court.

*See* CR 81; RCW 2.04.200.

■ The counterclaim exception in CR 41(a)(3) has an extremely limited application. *See* C. Wright & A. Miller, *Federal Practice and Procedure* § 2365 (1971). The defendants' defenses—that the covenant not to sue constituted a release or that the settlement was reasonably compensatory—do not constitute a "counterclaim." *See Betor v. Chevalier*, 121 Mont. 337, 193 P.2d 374 (1948); *Tabor v. Lederer*, 205 Kan. 746, 472 P.2d 209 (1970). The plaintiff had a right to a voluntary nonsuit. The trial court erred in denying that motion.

The next question before us is whether the trial court abused its discretion in granting defendants' motion to dismiss. After nearly a week of considering preliminary matters, by the following Monday the parties had each given their opening statements and Mr. Elliott had been examined and cross-examined. The court then denied plaintiff's motion for a nonsuit. At that time, 10:45 a.m., plaintiff's counsel asked the court for the rest of the morning to reschedule witnesses. The court replied, "No, we are going to go forward." Counsel stated he had no witnesses present

and, after some discussion, again requested a recess. The court denied the request and granted defendants' motion for an involuntary nonsuit. CR 41(b).

The parties had allegedly spent 2 years preparing for this case. During the days preceding defendants' motion, issues had surfaced which delayed the trial beyond its expected commencement. Plaintiff's witnesses were medical personnel who understandably had not sat through days of argument on motions and voir dire waiting to testify. Nevertheless, within a matter of minutes, the litigation came to an abrupt termination. In his order, the trial judge wrote:

> [T]he court having ordered the plaintiff to continue with his case upon denial of his motions noted above, and finding that the plaintiff unilaterally cancelled the depositions of his anticipated experts scheduled for Saturday, January 10, 1976 over the objection of defendants . . . [finds] that this failure of plaintiff to proceed constitutes abandonment of his case against the defendants . . .

The cancellation of the depositions, while possibly reflecting poor judgment on the part of counsel, does not justify such a drastic measure as that taken by the trial judge. The position taken by the court was inappropriately harsh on the plaintiff and cannot be considered proper under these circumstances. Counsel for plaintiff had not walked from the courtroom and "abandoned" his case as in the case of *Jackson v. Standard Oil Co.,* 8 Wn. App. 83, 505 P.2d 139 (1972). On the contrary, having been refused his voluntary nonsuit—to which we hold he was entitled— counsel asked for a recess of 75 minutes so he could then bring in his expert witnesses following lunch. This request was abruptly and peremptorily refused. We find the trial court acted in a manifestly unreasonable manner and abused its discretion in granting the defendants' motion to dismiss. *State ex rel. Carroll v. Junker,* 79 Wn.2d 12, 26, 482 P.2d 775 (1971).

■ The next issue before us is whether the trial court erred in ruling that the jury could be informed of the covenant not to sue. In *Mills v. Inter Island Tel. Co.*, 68 Wn.2d 820, 829, 416 P.2d 115 (1966), this court stated that:

> [T]he distinction between a covenant not to sue and a release will be preserved according to the intention of the parties, unless the document is operative as a release because (1) a reasonably compensatory consideration has been paid by a codefendant (2) for the alleged tort (3) to (for the benefit of) the party plaintiff who gives the covenant not to sue.

Whether the amount paid is "reasonably compensatory" is a question of fact to be decided by the trier of fact. *Baumgardner v. American Motors Corp.*, 83 Wn.2d 751, 522 P.2d 829 (1974); *Christianson v. Fayette R. Plumb, Inc.*, 7 Wn. App. 309, 499 P.2d 72 (1972); *Hargreaves v. American Flyers Airline Corp.*, 6 Wn. App. 508, 494 P.2d 229 (1972). None of these cases, however, discuss the issue of how or when this question goes to the jury or the circumstances under which the jury is to make its determination.

Here, the trial court intended to have the jury determine the reasonableness of the compensation and the defendants' negligence. If the jury found the $125,000 settlement was not reasonably compensatory and the defendants negligent, it was to find the total damages. The $125,000 would then be subtracted from this amount. If the jury found the settlement was reasonably compensatory, it would constitute a release and there would, of course, be no further discovery. *See Getzendaner v. United Pac. Ins. Co.*, 52 Wn.2d 61, 322 P.2d 1089 (1958).

Plaintiff argues this procedure jeopardizes his right to a fair trial and that it was error to allow the information concerning the covenant not to sue to go to the jury. It is

contended the proper procedure is for the court to withhold from the jury evidence of the payment from Dr. Kundahl, allow the jury to arrive at a verdict and, if the verdict exceeds $125,000, for the court to reduce it by that amount.

There is considerable division among the courts, not only on this question (see *Manner of Crediting One Tortfeasor With Amount Paid by Another For Release or Covenant Not To Sue,* Annot, 94 A.L.R.2d 352 (1964)), but also on whether disclosure to the jury of the existence of a covenant not to sue would have an adverse impact on plaintiff or defendant. *See, e.g., Albrecht v. Broughton,* 6 Cal. App. 3d 173, 85 Cal. Rptr. 659 (1970); *Hardin v. New York Cent. R.R.,* 145 W. Va. 676, 116 S.E.2d 697 (1960); *De Lude v. Rimek,* 351 Ill. App. 466, 115 N.E.2d 561 (1953). On balance, we believe the better rule is the one urged by the plaintiff.

While the reasonableness of the compensation under a covenant not to sue is a question of fact, this can best be determined and the interests of the parties better protected by submitting the case to the jury after the trial without mentioning the covenant not to sue at any time during the trial. Then, if the jury finds for the plaintiff, the court will know the value placed on the injury sustained by the plaintiff and thus, by this measure, the reasonableness of the covenant not to sue. If the verdict exceeds the amount paid under the covenant not to sue, the verdict will be reduced by that amount. On the other hand, if the jury verdict is no greater than or less than the amount paid under the covenant not to sue, the covenant will be deemed compensatory.

We reverse the trial court on its denial of the voluntary nonsuit and the granting of the involuntary nonsuit as well as its ruling that evidence could be introduced relative to

the covenant not to sue, and that the jury could be informed of the covenant in the voir dire.

WRIGHT, C.J., and ROSELLINI, HAMILTON, STAFFORD, UTTER, BRACHTENBACH, HOROWITZ, and HICKS, JJ., concur.