[No. 45964.    En Banc.    September 13, 1979.]

RALPH D. ELLIOTT, *as Administrator, Respondent,* v.
C. DIRK PETERSON, ET AL, *Petitioners.*

*James R. Dickens* (of *Karr, Tuttle, Koch, Campbell, Mawer & Morrow, P.S.*), for petitioners.

*Kenneth D. VanDerhoef* (of *Geraghty & VanDerhoef*), for respondent.

ROSELLINI, J.—In this action, the plaintiff seeks damages for the death of his wife, allegedly resulting from negligence of the defendant dentists. The controversy was before this court earlier in *Elliott v. Kundahl*, 89 Wn.2d 639, 574 P.2d 732 (1978), where we held that the plaintiff's motion for voluntary nonsuit had been erroneously denied. It was further held in that case that the court had erred in granting the defendant's motion to dismiss with prejudice. The judgment was reversed.

Shortly after our decision in that case was filed, both parties presented orders to the trial court granting the plaintiff's motion for voluntary nonsuit, and both were

signed by the court. Within a few days, this action was commenced, the complaint alleging essentially the same facts as those alleged in the former complaint. The defendants promptly moved for summary judgment, asserting the statute of limitation. That motion was denied, and this court granted discretionary review.

It appears that at the time of the plaintiff's original motion for voluntary nonsuit, a period of some 2 months remained before the expiration of the applicable statute of limitation. The period of limitations expired long before the appeal was decided. Thus when this court reversed the trial court's denial of the plaintiff's motion for voluntary nonsuit, he was left without a right of action, if the statute of limitation is controlling in these circumstances. Such a result would mean that a plaintiff, successfully challenging a lower court's denial of the right given him under CR 41(a), would be denied the fruits of his appeal in every case in which he intended to pursue his claim and the statute of limitation had run during the pendency of the appeal.

While the opinion of this court in *Elliott v. Kundahl, supra,* did not expressly order a new trial, this was its intent and import. This court ruled upon the admissibility of evidence of a covenant not to sue, a ruling which could be significant only in a new trial. Where this court reverses a judgment and makes no final disposition of the case, the usual procedure contemplated is a new trial. *Rousseau v. Rosche,* 158 Wash. 310, 290 P. 806 (1930); *Richardson v. Carbon Hill Coal Co.,* 18 Wash. 368, 51 P. 402, 1046 (1897). This is true when it is fairly apparent from the court's discussion of the case that the cause is remanded with that object in view. *See State ex rel. Moore & Co. v. Superior Court,* 97 Wash. 250, 166 P. 628 (1917); *Rousseau v. Rosche, supra.* Under our holding, then, the plaintiff was entitled to a new trial if he desired to pursue the same.

The right to a voluntary nonsuit is fixed at the time the motion is made. *McKay v. McKay,* 47 Wn.2d 301, 287 P.2d 330 (1955); *Krause v. Borjessan,* 55 Wn.2d 284, 347 P.2d 893 (1959). In order to accord to the plaintiff the

full benefit of that right, it must be held that his right to file a new suit based on the same claim is also fixed as of that moment. An important aspect of that right is the period of time remaining before the expiration of the statute of limitation. Accordingly, when the right to a nonsuit is erroneously denied, and it is so held on appeal, a plaintiff is entitled to an equal period of time, after the remittitur, within which to file a new action. Otherwise, the right is but a delusion in all cases where the statute of limitation expires pending appeal.

This court, in *Elliott v. Kundahl, supra,* reversed the trial court's order denying the plaintiff's motion for voluntary nonsuit. The effect of this was to grant that motion; and the subsequent motions for nonsuit filed by both parties were superfluous, as were the lower court's orders granting these motions. These procedures did not disturb the right of the plaintiff to bring a new action within the period of time remaining before the expiration of the statute of limitation, when the original motion was made.

The defendants argue that it is contrary to the intent of the legislature, as expressed in the statutes which govern the limitation of actions, to allow the plaintiff a period of time after the appellate decision in which to file a new action. It is true that those statutes contain no express exception for a situation of this kind. RCW 4.16.240 provides that where an action is commenced within the time prescribed therefor and a judgment for the plaintiff is reversed on appeal, he shall have 1 year to commence a new action.[1] No provision is made for the case where a judgment for the defendant is reversed on appeal. It would seem apparent that the reason for this is that such a reversal almost invariably results in the entry of a judgment for the plaintiff or the granting of a new trial. In either case, an

---

[1] "If an action shall be commenced within the time prescribed therefor, and a judgment therein for the plaintiff be reversed on error or appeal, the plaintiff, or if he dies and the cause of action survives, his heirs or representatives may commence a new action within one year after reversal." RCW 4.16.240.

extension of the time in which to bring a new action is unnecessary.

While the legislature did not take cognizance of the peculiar problem arising where a plaintiff is erroneously denied the right to a voluntary nonsuit, judgment is entered for the defendant, and the statute of limitation runs pending the plaintiff's appeal, it is evident that it intended that a plaintiff should not be denied the fruits of his appeal because of the passing of the period of limitations. This view also finds support in RCW 4.16.230,[2] which provides for the tolling of the statute where the commencement of an action is stayed by injunction. A judgment of dismissal with prejudice is not technically an "injunction." Still, its effect is to prevent the filing of another suit upon the same claim, since such a suit would be vulnerable to a plea of res judicata.

Recognition of the plaintiff's right to further pursue his claim is implicit in our decision in *Elliott v. Kundahl, supra.* That right is not only necessitated in order to effectuate his right to a voluntary nonsuit but is in accord with the spirit, if not the letter of the exceptions found in the statute of limitation.

We conclude that the trial court did not err in refusing to dismiss the action.

The order is affirmed and the cause is remanded for further proceedings.

UTTER, C.J., WRIGHT and HOROWITZ, JJ., and HAMILTON, J. Pro Tem., concur.

WILLIAMS, J., (dissenting)—I dissent from the court's decision in this case. In reaching its conclusion, the court has created a new exception to the statutes of limitation with no compelling reason to do so.

The facts of this case can be summarized as follows:

---

[2]"When the commencement of an action is stayed by injunction or a statutory prohibition, the time of the continuance of the injunction or prohibition shall not be a part of the time limited for the commencement of the action." RCW 4.16.230.

Mary Ellen Elliott died on March 27, 1973, when she developed complications from anaesthesia administered to her for dental work. The plaintiff, Ralph D. Elliott, as administrator of her estate, commenced a wrongful death action against Peterson and others under cause No. 771287 in King County on September 27, 1973. Subsequently, Elliott settled with one of the codefendants, Kundahl, for the amount of $125,000, and the claim against Kundahl was dismissed prior to trial. The action against Peterson proceeded to trial. On January 12, 1976, Elliott moved for a voluntary nonsuit without prejudice. In argument before this court, Elliott's counsel stated that his purpose for seeking a nonsuit was to bring the case again before a different trial judge, because the judge trying the initial case had made several rulings adverse to Elliott. The motion for a voluntary nonsuit was denied by the trial judge, and when plaintiff did not proceed further with his case, Peterson's motion for an involuntary dismissal with prejudice was granted.

Appeal from those orders was taken to this court. On February 9, 1978, the court reversed several of the trial court's rulings. This court held that Elliott was improperly denied a voluntary nonsuit and that the trial court improperly granted Peterson's motion to dismiss. *Elliott v. Kundahl*, 89 Wn.2d 639, 574 P.2d 732 (1978).

After this court's decision in *Elliott v. Kundahl, supra,* Elliott returned to Superior Court and moved for a voluntary dismissal of the action. It is curious why Elliott again sought the voluntary nonsuit, since the case had been reassigned. On February 17, 1978, an order was entered by the Superior Court granting plaintiff's motion for a voluntary nonsuit without prejudice. On March 8, 1978, Elliott commenced a second action, King County cause No. 842014, based on the same incident. By the time he commenced the second action, Elliott must have become aware that he had a problem regarding the statute of limitation because he inserted in his pleadings under the title "Limitations Stayed":

3.1 The statute of limitations on the commencement of this action has been stayed due to an appeal from Cause No. 771287 which concerned the same torts and the Superior and Appellate Courts of Washington.

It is noteworthy that none of the courts involved in this action had issued any type of stay of the statute of limitation, nor was one requested by Elliott at any point in the procedure.

Peterson moved to dismiss the second action on the ground that the 3-year statute of limitation applicable to malpractice claims pursuant to RCW 4.16.080 had run in 1976 during the pendency of *Elliott v. Kundahl, supra.* The trial court denied Peterson's motion and discretionary review was granted by this court. By its decision today, this court has affirmed the trial court's denial of Peterson's motion to dismiss. I would reverse the trial court's action.

The legislature has clearly provided for certain exceptions to the limitations periods set forth in the chapter. One such section states:

> If an action shall be commenced within the time prescribed therefor, and a judgment therein *for the plaintiff* be reversed on error or appeal, the plaintiff, or if he dies and the cause of action survives, his heirs or representatives may commence a new action within one year after reversal.

(Italics mine.) RCW 4.16.240.

The statute allows an action to be commenced after the statute of limitation has expired only where a judgment for the plaintiff has been reversed, not where judgment for the defendant has been reversed, as is the case here. Another section, RCW 4.16.230, provides for the tolling of the statute where the commencement of an action is stayed by an injunction. It is a general rule of statutory construction that the expression of one thing in a statute excludes others not expressed. *Dominick v. Christensen,* 87 Wn.2d 25, 548 P.2d 541 (1976). Applying that rule, it is apparent that the legislature *did not intend* that the statute of limitation be tolled by an appeal of a judgment for the defendant. *See*

*Marshall–Wells Hardware Co. v. Title Guar. & Sur. Co.,* 89 Wash. 404, 154 P. 801 (1916) (statute not applicable where action has not been reversed). It is noteworthy that unlike Washington the statutes of some states provide that a second action may be commenced within 1 year of appellate court reversal, other than on the merits, where *either* the plaintiff or defendant prevailed at trial. *See Successive actions as within statutory provision fixing time within which new action may be commenced after nonsuit or judgment not on merits;* Annot., 54 A.L.R.2d 1229 (1957). It is also apparent that the legislature intended injunctions, as opposed to pending appeals, to toll the statute of limitation.

Another general rule is that where exceptions to the statute of limitation have been provided, the court cannot supply others. *Amy v. Watertown* (No. 2), 130 U.S. 320, 32 L. Ed. 953, 9 S. Ct. 537 (1889); *Rowray v. McCarthy,* 48 Wyo. 108, 42 P.2d 54 (1935); *Mendini v. Milner,* 47 Idaho 439, 276 P. 313 (1929); *Musgrave v. McManus,* 24 N.M. 227, 173 P. 196 (1918). The court's decision disregards this rule and constitutes judicial legislation.

Most courts recognize a limited class of exceptions arising from necessity. *Wagner v. New York, O. & W. Ry.,* 146 F. Supp. 926 (M.D. Pa. 1956). The broad rule is that whenever some paramount authority prevents a person from exercising his legal remedy, the time during which he is thus prevented is not to be counted against him in determining whether the statute of limitation has barred his right, even though the statute makes no specific exception in his favor in such cases. *Seamans v. Walgren,* 82 Wn.2d 771, 514 P.2d 166 (1973); *Yoder v. Nu–Enamel Corp.,* 145 F.2d 420 (8th Cir. 1944); *Wagner v. New York, O. & W. Ry., supra.* Such a paramount authority may appear in the form of a natural emergency, such as a flood, which prevents a plaintiff from filing his or her action in a timely manner, *Wagner v. New York, O. & W. Ry., supra,* or it may take the form of a positive rule of law such as statutory immunity, which prevents a person from exercising his

or her legal remedy against another for a period of time. *Seamans v. Walgren, supra.* Accordingly, in the absence of a statute creating an exception to the statute of limitation, an injunction or certain legal proceedings which prevents one from exercising his legal remedy against another is often held to toll the operation of the statute of limitation. *See* 51 Am. Jur. 2d *Limitation of Actions* § 140 (1970), and 51 Am. Jur. 2d *Limitation of Actions* § 170 (1970).

The pendency of an appeal has been held to toll the limitations period in cases where the appeal precludes maintenance of the suit,[3] 54 C.J.S. *Limitations of Actions* § 248 (1948). It seems quite clear to me, however, that the appeal period in question in no way interfered with the viability of Elliott's action against Peterson. The majority asserts that application of the statute of limitation would serve to deprive Elliott of the new trial he was entitled to. This is simply not so.

The majority misconstrues the effect of this court's reversal in the first appeal. Such a reversal does not result in a termination of the first action with the right to start a new one. Rather, the effect of this court's reversal was simply to reinstate plaintiff's action which would permit him either to abandon or continue it.

The reinstatement of actions subsequent to appeal routinely takes place at the superior court level. Successful appellants are not required nor expected to dismiss their original actions in superior court, bring a new cause under a

---

[3]None of the cases of which I am aware in which the pendency of an appeal has been held to toll the limitations period has facts which are apposite to those of the present case. For example, it has been held that an appeal from a judgment with supersedeas tolls the running of the statute of limitation *against the judgment* during the pendency of appellate proceedings. 51 Am. Jur. 2d *Limitation of Actions* § 174, at 744 (1970). *See Baisch v. Gibson,* 138 Wash. 127, 244 P. 259 (1926) (a proceeding on appeal to reverse a judgment for plaintiff where no supersedeas bond is given, is no obstacle to *the enforcement of the rights established by the judgment* and therefore such an appeal will not prevent the running of the statute of limitation). For other examples of situations where appeals have been held to toll the statute of limitation, *see* 51 Am. Jur. 2d *Limitation of Actions* § 175 (1970) and 54 C.J.S. *Limitations of Actions* § 248 (1948).

new filing number, and pay a second filing fee. Rather, Elliott could and should have proceeded with his original action. If necessary, Elliott could have even amended the complaint, even though the statute of limitation had run, and the amendment would have related back to the date of filing of the original complaint. *See Guaranty Trust Co. v. Yakima First Nat'l Bank,* 179 Wash. 615, 38 P.2d 384 (1934). Instead, *as a matter of tactics,* or some reason not readily apparent, he chose to take the voluntary nonsuit after the appeals period had run. Therefore, the appeals period in and of itself did not deprive Elliott of his remedy. His own choice of strategy caused the problem, and I do not consider this to provide sufficient necessity for the court to toll the limitations period in the absence of statutory provision.

The rule that an injunction often tolls the operation of the statute of limitation in the absence of a statutory exception has no application to this case. As the majority observes with great understatement, at page 590, "A judgment of dismissal with prejudice is not technically an 'injunction.'" The difference between these two procedural steps warrants applying the doctrine of necessity in cases involving the latter but not the former.

In cases from two other jurisdictions, courts have considered the issue presently before this court and have reached results contrary to this court's decision. *See West Coast Fruit Co. v. Hackney,* 102 Fla. 1066, 136 So. 699 (1931), and *Vines v. Crescent Transit Co.,* 274 Ala. 173, 146 So. 2d 318 (1962). In *West Coast Fruit Co.,* the court held that where a trial court erroneously refuses to enter a nonsuit but enters final judgment against the defendant instead, an appeal in such a suit does not suspend the running of the statute of limitation. The court reasoned that the plaintiff/petitioner was under no necessity of finally dismissing its first suit and starting another one because of procedural steps which were available to plaintiff under state law which could have continued the existence of the first action. The court therefore refused to consider the situation to be

one where the character of the legal proceeding is such that the law restrains one of the parties from exercising a legal remedy against another. *West Coast Fruit Co.* differs from the present case in that the court ordered judgment against the defendant, whereas in this case the trial court ordered judgment against the plaintiff. However, this factual distinction does not mitigate the applicability of the reasoning of that case to the present one.

In *Vines,* the trial court denied plaintiff's motion for a nonsuit and, as in this case, entered judgment in favor of the defendant. Plaintiff prevailed on appeal, obtained a nonsuit, and commenced another action after more than 6 years following the alleged date that the cause of action accrued and the statute of limitation had run. An Alabama savings statute made similar provision to the one in this state. The court held that the savings statute did not afford the plaintiff any relief. The court explained, citing *West Coast Fruit Co.,* that if plaintiff lost her remedy it was her own doing. I must agree with the court in *West Coast Fruit Co.;* if, as the majority here asserts, recognition of plaintiff's right to a nonsuit is "necessitated", the necessity was brought upon by his own doing.

In forging a new exception to the statute of limitation to accord with the facts of this case, I am afraid that the court has abandoned or at least lost sight of its explanation of the purpose of statutes of limitation set forth in *Ruth v. Dight,* 75 Wn.2d 660, 453 P.2d 631 (1969). In that case, Justice Hale wrote for a unanimous court:

> There is nothing inherently unjust about a statute of limitations. Limitations on the time in which one may sue also limit the time in which another may be sued. If one cannot bring an action, by the same token he cannot compel another to defend it. Statutes of limitation, although having their origins in legislative proceedings—aside from equitable principles of laches and estoppel—thus contemplate that a qualified freedom from unending harrassment of judicial process is one of the hallmarks of justice. No civilized society could lay claim to an enlightened judicial system which puts no limits on the time in

which a person can be compelled to defend against claims brought in good faith, much less whatever stale, illusory, false, fraudulent or malicious accusations of civil wrong might be leveled against him.

In applying the statutes of limitation, the courts have made many assumptions. Stale claims, from their very nature, are more apt to be spurious than fresh; old evidence is more likely to be untrustworthy than new. Time dissipates and erodes the memory of witnesses and their abilities to accurately describe the material events. In time witnesses die or disappear, and the longer the time the more likely this will happen. With the passing of time, minor grievances may fade away, but they may grow to outlandish proportions, too. Finally, and not to be ignored, is the basic philosophy underlying the idea that society itself benefits, except in capital cases, when there comes a time to everyone, be it long or short, that one is freed from the fears and burdens of threatened litigation.

While it has been a long cherished ambition of the common law to provide a legal remedy for every genuine wrong, it is also a traditional view that compelling one to answer stale claims in the courts is in itself a substantial wrong. After all, when an adult person has a justiciable grievance, he usually knows it and the law affords him ample opportunity to assert it in the courts. Consequently, as a matter of basic justice, the courts usually have a cogent reason to give limitation statutes a literal and rigid reading, and to declare that the right to sue begins with the wrongful acts and ends with the statutory period unless earlier terminated by laches or estoppel.

*Ruth v. Dight, supra* at 664–65.

In contrast to these principles and every shred of law on the subject, the court now seeks to apply the "spirit, if not the letter" of the statute of limitation. I contend that such a task is impossible; either an action is barred by the statute or it is not. Cutting off stale actions by a given date is the spirit *and* the letter of the law. In resurrecting a 6–year–old medical malpractice suit by creating a new exception to the statute of limitation, I feel that the court has departed from statutory law and case law with no cogent

reason to do so. Accordingly, I would reverse the trial court's denial of Peterson's motion to dismiss.

BRACHTENBACH, DOLLIVER, and HICKS, JJ., concur with WILLIAMS, J.

